# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN M. SIMMS,            :

          **Plaintiff**      :

           **v.**              :

MORRIS L. HOUSER, *et al.*,    :

        **Defendants**   :

**CIVIL ACTION NO. 3:21-0321**

**(JUDGE MANNION)**

## MEMORANDUM

### I. BACKGROUND

Plaintiff, an inmate confined in the Rockview State Correctional Institution (SCI-Rockview), Bellefonte, Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The named Defendants are the following SCI-Rockview employees: Deputy Warden Houser, Deputy Warden Rivello, LPM Miller, Security Lt. Sherman, Security Captain VanGorder, PREA Lt. Rutherford and Dr. Byerlee. Id. (Doc.15).

Presently before the Court is Defendants' motion to dismiss. (Doc. 25). The motion is fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant Defendant's motion to dismiss. Also before the Court is Plaintiff's motion for preliminary injunction and temporary restraining order, (Doc. 4) and Plaintiff's motion for leave to file a supplemental

complaint. (Doc. 42). Because Plaintiff cannot prevail on the merits of his §1983 claim, his motion for preliminary injunction will be denied. For the reasons set forth below, Plaintiff's motion to supplement will also be denied.

## II. ALLEGATIONS IN COMPLAINT

Plaintiff's complaint states in toto:

On 4-6-20, I wrote a letter to an outside DOC official about my problems here in Rockview that entailed PREA related issues. The matter was referred to defendant Byerlee (psych at Rockview). I then engaged in constitutionally protected conduct (free speech via PREA report; 42 U.S.C. §15601) and told Byerlee that PREA violations were enacted on me by multiple people in multiple places over the course of 10 years (this is generally paraphrased). Places include Rockview, SCI-Greensburg, and my county jail. Byerlee intentionally sabotaged certain parts of my report that lead to an adverse action; a misconduct (DC-141). The misconduct exposed highly sensitive medical type information and also labeled me as an informant for making an official report to staff on a fellow inmate(s). The misconduct was then entered into the DOC computer which enabled non-essential staff to view it and show other inmates. As an additional consequence, the gang members involved in the PREA violations seen this information, resulting in a "hit" being put on me. The causal connection is that the 141 misconduct was based on the report Byerlee sabotaged. Punishing PREA victims or exposing their reports to non-essential staff serves no governmental, penological or public interest and the actions of the defendant would certainly deter victims from making a report in the future. I also aver that this information shouldn't ever be exposed in any way under the well-established rape shield laws.

Acting off of defendant Byerlee's fraudulent report, defendant Rutherford and Miller did a "PREA investigation." The

- 2 -

constitutionally protected conduct was the PREA report. While these 2 were not involved in taking the report, it is their responsibility to do a "follow-up," monitor for retaliation, monitor victims, provide counseling, and make sure that victims can meet with staff. If they would've followed their own policy/procedures, the report could've been corrected, and a proper investigation would've been done. Instead, they violated their own policy/procedures and never once came to speak to me about the report. Since they violated policy, the adverse action was a 141 misconduct that exposed highly sensitive medical type information to non-essential personnel (via DOC computer) that also labeled plaintiff as a "snitch." Inmate also seen this 141 misconduct and as a result, the gang members who enacted the PREA violations on him put a "hit' on plaintiff, the causal connection is the sabotaged report and subsequently botched investigation coupled with blatant policy/procedure violations resulted in the 141 misconduct and threats by gang members punishing PREA victims or exposing their reports serves no governmental, penological or public interest and the actions of defendants would certainly deter victims from making a report in the future. I further aver that this type of information should never be exposed for any reason (especially to non-essential personnel) under the well-established rape shield laws.

On 10-7-20, PRC (defendants Houser, Miller and Rivello) gave the orders to let me back out to population. This made me choose between being stabbed to death/catching COVID 19 or staying in the psychological torture cell (solitary confinement). I refused to go to population to preserve my life and I was given a misconduct for doing so. I submitted an "inmates version" which was read by the hearing examiner, then forwarded to security. Nothing happened to my benefit, only to my detriment (30 days punishment). I finished exhausting to final review with no change. This process was then repeated 3 more times with no results (11-5-20, 12-3-20 and 12-30-20). The only variation was on 11-5-20 when PRC intentionally ordered me to go to an "Enhanced Quarantine" Housing unit with confirmed COVID 19 cases during a mass outbreak within Rockview (including the Housing unit I was supposed to go to). I tried to grieve the PREA issue, but

- 3 -

> since a misconduct was issued, DOC policy prevents me from filing grievances on misconducts/ issues misconducts were issued over. The misconduct was later dismissed without prejudice but the damage was already done. This also prevented me from remedies associated with misconducts. There are no other remedies available to me.
>
> On 1-14-21, I was placed on A/C pending transfer to the "PCU" in SCI-Forest where it is notorious for violence and a high concentration of the same gang members I'm seeking protection from.

(Doc. 1 at 7-11).

On February 22, 2021, Plaintiff filed the instant action in which he alleges Eighth and Fourteenth Amendment violations as well as conspiracy claims under 42 U.S.C. §1985(3) and 42 U.S.C. §1986 and intentional infliction of emotional distress. Id. at 11-17. For relief, Plaintiff seeks nominal, compensatory, and punitive damages, as well as injunctive relief in the form of "body cameras with audio for all DOC staff", changes in policy related to "grieving incidents that misconducts were issued over", and "a change in policy preventing any PREA related information to be available to non-essential staff" and "preventing misconducts being issued to PREA victims." Id. at 19. Plaintiff also requests "an outside party (outside the DOC) to investigate staff misconduct alleged in grievances" and "a change in policy that enables the hearing examiner to put an inmate on P/C per inmate's request." Id.

- 4 -

Along with the filing of his complaint, Plaintiff filed a motion for preliminary injunction and temporary restraining order, claiming Defendants are not providing him a safe environment. (Doc. 5). Plaintiff requests an order "placing/keeping him on P/C, giving him a semblance of human contact via electronics he has already paid for, preventing him from being transferred into a prison that exacerbates his situation instead of protecting him from danger, and holding this injunction until the final outcome of the case in full at its earliest convenience, since plaintiff could be 'shipped' to SCI-Forest at any time." Id. Attached to Plaintiff's brief in support of his motion are the undisputed authentic documentation regarding his refusal to return to general population. Id.

Defendants oppose Plaintiff's motion, arguing that Plaintiff's motion should be denied for Plaintiff's failure to establish the probability of harm, justifying the intervention of the Court. (Doc. 31). Attached to Defendants' brief in opposition are the undisputed authentic documentation regarding Plaintiff's PREA claim. Id.

The undisputed documentation which provides the basis for Plaintiff's complaint, reveals that in response to Plaintiff's April 6, 2020 request for services regarding the filing of a complaint under the Prison Rape Elimination Act, ("PREA"), an April 30, 2020 interview was conducted by Defendant

- 5 -

Byerlee of the SCI-Rockview psychology department. (Doc. 31-1 at 8). The interview revealed that Plaintiff "declined to speak about any of the details about the alleged abuse he experienced" and "[h]e made several vague statements," such as "[a]fter you get baited into someone's cell, and with a cellmate, it has made me one angry individual," reporting that "the abuse occurred for an 8-9 year period, but stopped when he moved to CB block" and that he is "not going to be a self-loathing person anymore" as he is "not the same person anymore." Id.

On May 12, 2020 a Sexual Abuse Investigative Summary was prepared by Defendant VanGorder, Intelligence Gathering Captain and was submitted to James C. Barnacle, DOC Director, through Superintendent Mark Garman. (Doc. 31-2 at 3). The summary revealed the following:

> Shawn Simms wrote a letter to Ms. Patrone on 4-6-2020 alleging that he had been raped by his cellmates while incarcerated at SCI-Rockview. This investigator attempted to interview inmate Simms on 5-5-2020 out of cell. The inmate refused. This investigator attempted to interview inmate Simms on 5-6-2020 out of cell. The inmate refused again, stating, "I'm good, I'm just trying to get my Z code." This investigator attempted to interview inmate Simms again on 5-12-2020 and again the inmate refused. An assessment was then made into the credibility of inmate Simms.

(Doc. 31-2 at 3). A review of the documentation gathered at the interview revealed the following:

- 6 -

> All documentation has been reviewed and it has been assessed that the inmate is attempting to utilize vague allegations as a means to manipulate PREA for a Z code. The allegations of sexual abuse at the hands of the former cellmates are vague, general statements of nothing specific. A review of the Post Sexual Assault Interview matches the responses this investigator received as well. As part of the assessment into the credibility of inmate Simms, there is a recurring theme, a desire on the inmate's part for a Z code.

(Doc. 31-1 at 4). Thus, it was concluded that the allegations made by Simms were unfounded, unsupported by evidence and "an obvious attempt to hasten a potential Z code for single cell housing." Id. It was recommended that the investigation be closed, and that Simms be issued a misconduct for lying to an employee, for the false allegations of sexual abuse as an attempt to manipulate his Z code status. Id.

On June 24, 2020, as a result of the Sexual Abuse Investigative Summary, Plaintiff was served with Misconduct Report No. D194773, charging him with lying to an employee. (Doc. 31-4 at 37).

On June 26, 2020, Simms appeared before Hearing Examiner Walter for a disciplinary hearing. (Doc. 31-4 at 36). Plaintiff pled not guilty and offered a written statement as to why he provided vague responses at the PREA interview. (Doc. 31-4 at 39). Having reviewed the evidence and the charges presented, Hearing Examiner Walter dismissed the misconduct charges without prejudice. (Doc. 31-4 at 36).

- 7 -

On October 7, 2020, Plaintiff was issued Misconduct Report No. D574132 for refusing to obey an order to pack his property as he was to be released from the RHU to general population. (Doc. 31-4 at 6). The reporting officer indicated that Plaintiff refused all orders given, stating "I'm cool maybe next month." Id. On October 13, 2020, Plaintiff pled guilty to the charge before Hearing Examiner Walter. (Doc. 31-4 at 5). On appeal, the Defendant Rivello, Houser and Miller, sitting as the Program Review Committee, sustained the hearing examiner's decision as follows:

> Inmate Simms is appealing Hearing Examiner's decision based on all of the selections above. He claims he purposely refused to leave the RHU. He believes that his safety is jeopardized due to a gang threat on his life and that this was the only way to get officials to take his concerns seriously and to look into the situation. He is asking that PRC investigates and provides security with a copy of his inmate version, dismiss the misconduct, provide him with Administrative Protective Custody, and give him back his electronics.
>
> Upon review of the report of misconduct, the record of the hearing, the appeal and all relevant information, the PRC finds that all procedures employed were in accordance with law, department directives and regulations, that the punishment was proportionate to the offense, and that there was sufficient evidence to support the decision.
>
> PRC informs Mr. Simms that he cannot appeal on the basis of "C" [the findings of fact were insufficient to support the decision] as listed above as he pleaded "Guilty." Once an inmate pleads guilty it is no longer incumbent upon the Hearing Examiner to establish guilty or innocence.

> PRC finds no error in the processing or adjudication of the written report. The punishment is well within sanctioning guidelines as he could have received a punishment up to 90 days DC.
>
> Security has been notified of his concerns, but at this time there is nothing to verify his allegations.
>
> PRC sustains the Hearing Examiner's Decision.

(Doc. 31-4 at 3). Simms subsequently received three additional misconducts for refusing to obey an order to pack his property to be released from the RHU to general population. (Doc. 31-4 at 16, 25, 34). Each misconduct resulted in thirty-day disciplinary confinement. (Doc. 31-4 at 15, 24, 33). Each misconduct was upheld on the basis that "there are not verified threats against Mr. Simms," (Doc. 31-4 at 31), and "Mr. Simms has provided no evidence of a threat to his person and Security has not identified any valid threats to his safety" (Doc. 31-4 at 13, 22). Finally, the thirty-day disciplinary sanction for each misconduct was found to be in accordance with sanctioning guidelines. Id.

## III. LEGAL STANDARDS

### A. MOTION TO DISMISS

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6)

- 9 -

of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010).

In reviewing a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." Id. at 230.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. Id. However, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to "assume that [the plaintiff]

can prove facts that [he] has not alleged...." <u>Associated Gen. Contractors of</u> <u>Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

Following the rule announced in <u>Ashcroft v. Iqbal</u>, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Rather, a complaint must recite enough factual allegations to raise the plaintiff's claimed right to relief beyond the level of mere speculation. <u>Id</u>. To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three-step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must 'show' such an entitlement with its facts." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 211 (3d Cir. 2009).

As the court of appeals has observed:

- 11 -

> The Supreme Court in <u>Twombly</u> set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' " <u>Id</u>. (citing <u>Twombly</u>, 550 U.S. at 557, 127 S.Ct. 1955).

<u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007).

The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also</u>, <u>U.S. Express Lines, Ltd. v. Higgins</u>,

281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B. SECTION 1983 STANDARD

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. §1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state

- 13 -

a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## IV. Discussion

### A. Prison Rape Elimination Act

Throughout his complaint, Plaintiff appears to raise claims against Defendants based upon their handling of his PREA complaint and for failing to follow certain provisions set forth in the PREA. However, "[w]hile the PREA was intended in part to increase the accountability of prison officials and to protect the Eighth Amendment rights of Federal, State, and local prisoners, nothing in the language of the statute establishes a private right of action." See Walsh v. N.J. Dep't of Corr., No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017); see also Krieg v. Steele, 599 F. App'x 231, 232 (5th Cir. 2015) (noting that "other courts addressing this issue have found that the PREA does not establish a private cause of action"); Frederick v. Snyder Cty. Prison, No. 3:18-cv-707, 2019 WL 1348436, at *4 (M.D. Pa. Mar. 22,

2019) (concluding same). Thus, Plaintiff cannot "bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through [an] attempt to enforce the [CCCF] PREA policy via section 1983." See Bowens v. Emps. Of the Dep't of Corr., No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), aff'd, Bowens v. Wetzel, 674 F. App'x 133, 137 (3d Cir. 2017). Moreover, to the extent Plaintiff challenges the quality of the investigation into his PREA complaints, he has no freestanding right to such an investigation. See Graw v. Fantasky, 68 F. App'x 378, 383 (3d Cir. 2003) (stating that "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim."). Accordingly, any claims premised upon violations of the PREA must be dismissed as a matter of law.

## B. EIGHTH AMENDMENT CLAIMS

The Eighth Amendment of the United States Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). This includes the general duty to "protect prisoners from violence at the hands of other prisoners." Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). To state a viable failure-to-protect claim, the plaintiff must establish that: (1) he was incarcerated under

- 15 -

conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused the plaintiff to suffer harm. Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012), abrogated on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir. 2020). The standard for deliberate indifference is subjective; thus, the prison official "must actually have known or been aware of the excessive risk to inmate safety." Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

Simms claims that Defendants Byerlee, Rutherford and Miller "were all deliberately indifferent towards Plaintiff when they issued a 141 misconduct that exposed highly sensitive medical type information and labeled Plaintiff a 'snitch'." (Doc. 1 at 11). He further claims that "all DOC employees are also trained and taught that 'snitches', 'homosexuals' and 'sex offenders' are at a higher risk then others because of being labeled a 'snitch', 'homosexual' or 'sex offender'." Id. Simms alleges that "Byerlee sabotaged the PREA report which led to a botched investigation that was further hampered by Rutherford and Miller for not following PREA policy/procedures" and that "all 3 defendants are required to work in tandem for PREA reports/investigations." Id. He concludes that "all 3 of them had the means to correct the PREA report/investigation by (in Byerlee's case) re-doing the sabotaged report to

- 16 -

undo his misconduct or (in Rutherford and Miller's case) by abiding by policy/procedure which would have enabled them to correct the report and thus, do a proper investigation." Id.

Initially, the Court finds that the invocation of Constitutional Amendments does not save Plaintiff's PREA claim. As a matter of law, Plaintiff cannot pursue a §1983 claim based on Defendants' alleged failure to comply with the PREA. See Haffner v. Geary Cty. Sheriff's Dep't, 2019 WL 1367662, at *4 (D. Kan. Mar. 26, 2019). To the extent that Plaintiff attempts to raise a claim pursuant to PREA, his claim fails as it is not cognizable and must be dismissed.

Moreover, to the extent that Plaintiff attempts to assert a constitutional violation for his PREA report being put on a computer which enabled "non-essential staff to view it and show other inmates," (Doc. 1 at 10), Plaintiff voluntarily provided the information and there is no allegation that Defendants improperly disclosed Plaintiff's information. Moreover, as a matter of law, Plaintiff cannot pursue a §1983 claim based on Defendants' alleged failure to comply with the PREA. See Haffner v. Geary Cty. Sheriff's Dep't, 2019 WL 1367662, supra.

To the extent that Plaintiff is alleging an Eighth Amendment, failure to protect claim, being labeled a "snitch" or a "rat" can be a dangerous

designation in prison. See, e.g., Easley v. Tritt, 2021 WL 978815, at *13 (M.D. Pa. Mar. 16, 2021) (citing Moore v. Mann, 823 Fed. Appx. 92, 96 (3d Cir. 2020)) (per curiam) (recognizing that "other circuits have held that prison officials' failure to protect an inmate labeled a 'snitch' constitutes deliberate indifference"). Some courts have also held that labelling an inmate a snitch created a substantial risk of harm in contexts where it was ambiguous if the defendant meant that the inmate was snitching on prison officials or other inmates. See, e.g., Rodriguez v. Hayman, 2009 WL 4122251, at *7 (D.N.J. Nov. 23, 2009) ("An inmate being labeled a snitch creates a substantial risk of harm."). The Third Circuit concluded that there was "a genuine dispute regarding whether the defendants were deliberately indifferent to the risk of telling other inmates that Moore was gay, a pedophile, or a snitch." Moore, 823 Fed. Appx. at 96. The court in Moore relied on other circuit court of appeals decisions to conclude that "prison officials' failure to protect an inmate labeled a 'snitch' constitutes deliberate indifference." Id. (citing Irving v. Dormire, 519 F.3d 441, 451 (8th Cir. 2008) ("After all, who better knows the opprobrium and consequent effect thereof that attaches to the label of snitch than those who work daily within the inmate population."); Benefield, 241 F.3d at 1271; Northington v. Marin, 102 F.3d 1564, 1567 (10th Cir. 1996)). Even though the plaintiff in Moore had not been assaulted, the court

- 18 -

said that "an inmate need not wait until an actual attack occurs to obtain relief." Id. Moreover, it is a relevant consideration whether the plaintiff is in the presence of other inmates because an inmate is not put at a substantial risk of harm by being called a snitch with no one around; it is being around other inmates that makes a difference. See Hendrickson v. Emer. Med. Servs, 1996 WL 472418, at *5 (E.D. Pa. Aug. 20, 1996) (citations omitted).

Moore is distinguishable because in that case and those it relied on, the inmate was either accused in general of being a snitch or of snitching on other inmates and being a pedophile. Plaintiff's claim is that being issued a misconduct and having his PREA complaint entered into a computer, Defendants allegedly "put [his] life in danger by displaying highly sensitive medical information that labeled [him] a 'snitch' to all non-essential personnel." (Doc. 1 at 14). There is no overt intentional act alleged on the part of Defendants. Thus, the Court finds Defendants were not deliberately indifferent because, even if there could be a substantial risk of harm to Simms, there are no allegations that Simms feared an assault from another inmate because of this or that any of the named Defendants knew of such fear. See Tabb v. Hannah, 2012 WL 3113856, at *6 (M.D. Pa. July 30, 2012). Deliberate indifference requires that a prison official know of and disregard an excessive risk to inmate health or safety. See Farmer, 511 U.S. at 837,

- 19 -

114 S. Ct. 1970. Thus, Plaintiff's failure to protect claim is without merit and will be dismissed.

Finally, with respect to Plaintiff's claim that Defendants failed to protect when they "repeatedly denied him P/C" status, (Doc. 1 at 13), Plaintiff's own exhibits demonstrate that upon release from disciplinary custody, Plaintiff was moved to Administrative Custody status per DC-ADM 802, Section 1.B.1a, pending transfer to the Protective Custody Unit. (See Doc. 4-1 at 32). The PRC noted that Plaintiff was to "continue AC Status per DC-ADM 802, Section 1.B.1a, pending PCU placement." Id. Thus, the Court finds Plaintiff's allegation unfounded.

### C. Fourteenth Amendment Claims

#### A. Misconduct Challenges

Plaintiff suggests that Defendants violated his Fourteenth Amendment due process rights by submitting false misconduct reports against him and violated his rights by sanctioning him to 30 days in disciplinary custody. Plaintiff also suggests that Defendants violated his due process rights by sanctioning him with phone, visits, electronics, yard, and movement restrictions after issuing a misconduct charging him with refusing to return to general population. (Doc. 1 at 18).

It is well established, however, that the "filing of a false misconduct report does not violate an inmate's due process rights." Lewis v. Wetzel, 153 F. Supp. 3d 678, 702 (M.D. Pa. 2015). This is so because the sanctions stemming from prison disciplinary hearings "do not usually affect a protected liberty interest," Burns v. Pa. Dep't of Corr., 642 F.3d 163, 171 (3d Cir. 2011), and due process requires only "the opportunity to be heard and defend against the allegedly false misconduct report." Tolbert v. Ellenberger, No. 3:19-cv-410, 2019 WL 3193678, at *2 (M.D. Pa. June 17, 2019) (citing Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002)), Report and Recommendation adopted, 2019 WL 3202210 (July 15, 2019). Therefore, as long as "certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." Smith, 293 F.3d at 654.

Here, Plaintiff suggests that he received 30 days in solitary confinement for each misconduct, and was subjected to phone, cell, shower, yard, and movement restrictions. Neither disciplinary measure, however, is enough to establish that Plaintiff was deprived of a liberty interest. See, e.g., Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010) (noting that confinement in administrative custody for 178 days did not rise to the level of a protected liberty interest); Rosario v. Lynch, No. 2:13-cv-1945, 2017 WL 4098709, at

*12 (E.D. Pa. Sept. 15, 2017) (noting that detention in solitary confinement for fifteen (15) months does not trigger due process protections). Moreover, the other restrictions, such as using the phone, yard, and shower, do not constitute protected liberty interests. See Goenaga v. MacDonald, No. 3:14-cv-2496, 2017 WL 1197882, at *6 (M.D. Pa. Feb. 15, 2017), Report and Recommendation adopted, 2017 WL 1178072 (M.D. Pa. Mar. 30, 2017). Moreover, Plaintiff does not suggest that he was deprived of the opportunity to contest the misconducts, as he asserts that Defendants Houser, Rivello and Miller, upheld the decision. Accordingly, Plaintiff's Fourteenth Amendment due process claims regarding the misconducts and resulting sanctions will be dismissed.

## B. EQUAL PROTECTION

Plaintiff asserts that Defendants Miller, Rutherford and Byerlee violated his Fourteenth Amendment equal protection rights "as a patient seeking medical/psychological/PREA type held when they didn't give [him] some protection of the laws to similarly situated inmates" when his "PREA report was put on the DOXC computer than non-essential personnel have access to and allow other inmates to view." (Doc. 1 at 13). He further claims that Defendants Miller, Houser, Rivello, Sherman and VanGorder "violated [his] equal protection of the laws when they repeatedly denied [his] requests for

P/C despite well documented threats to [his] life." Id. at 14. He likens his situation to "those involved in gang violence (who requested P/C and received it), those who ran up drug debts (who requested P/C and received it) and those who were victims of assault/sexual assault (who requested P/C and received it). Id. He concludes that he "has constitutional rights to safe conditions and equal protections thereof, as does everyone else, but no one else is having this problem, ergo, plaintiff is pursuing these claims as a 'class of one'." Id. at 15.

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Traditionally, "[i]n order to establish a prima facie case of discrimination under the Equal Protection Clause, [plaintiffs] need[ ] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." See Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2002). However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim. See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008). To maintain such a claim, a plaintiff must establish that

- 23 -

he has been irrationally singled out for disparate treatment. See id. "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008). Persons are "similarly situated" for equal protection purposes when they are alike "in all relevant aspects." Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008) (quoting Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005)).

Here, Plaintiff has failed to plead any specific factual content to show that he was treated differently from others who were "similarly situated" to him in "all relevant aspects." Plaintiff's conclusory averments of disparate treatment are insufficient to state a plausible equal protection violation. See Joey's Auto Repair & Body Shop v. Fayette Cty., 785 F. App'x 46, 49 (3d Cir. 2019) (dismissing plaintiff's "class of one" equal protection claim where the plaintiff identified only one comparator business in its pleading and failed to allege details as to how the comparator was a "similarly situated" entity; thus, court could not conclude that comparator business was alike "in all relevant aspects"); see also Benjamin v. Clark, No. 1:20-CV-1991, 2021 WL 391987, at *7 (M.D. Pa. Feb. 4, 2021) ("When alleging the existence of similarly

situated individuals, plaintiffs 'cannot use allegations...that amount to nothing more than conclusory, boilerplate language to show that he may be entitled to relief,' and 'bald assertion[s] that other[s]...were treated in a dissimilar manner' will not suffice.") (citing <u>Young v. New Sewickley Twp.</u>, 160 F. App'x 263, 266 (3d Cir. 2005)) (alterations and ellipses in the original).

In any event, Plaintiff's assertion that he was uniquely discriminated against (as the sole member of a "class of one") by not receiving protective custody when requested is belied by his averment that on January 14, 2021, he was placed in Administrative Custody pending transfer to Protective Custody in SCI-Forest[1]." (Doc. 1 at 13).

### D. CONSPIRACY CLAIMS UNDER SECTIONS 1985(3) AND 1986

Plaintiff claims that Defendants Miller, Byerlee and Rutherford "engaged in a conspiracy to violate Plaintiff's constitutional rights to deter him from pursuing anymore PREA complaints/concerns." (Doc. 1 at 15).

---

[1] To the extent that Plaintiff complains about being transferred to Protective Custody in SCI-Forest, as being "notorious for its extreme violence and high concentration of gang members," the United States Supreme Court has held that an inmate has no inherent constitutional right to be confined at any particular facility. <u>Olim v. Wakinekona</u>, 461 U.S. 238, 251, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); <u>Jerry v. Williamson</u>, 211 Fed. App'x 110, 112 (3d Cir. 2006).

Specifically, he believes that these "(3) defendants conspired to sabotage it and expose plaintiff's highly sensitive medical information, while at the same time labeling him a 'snitch'." Id. He claims that Defendants Miller, Houser, Rivello, Sherman and VanGorder "conspired to violate plaintiff's right to safe conditions," by "forcing [him] to choose between being stabbed to death/catching a lethal virus or psychological torture in solitary confinement." (Doc. 1 at 16).

To prevail under §1985(3), a plaintiff must prove the following elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Brotherhood of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983). In his complaint, Simms simply states that "they simply conspired against Plaintiff" because "there are too many violations of policy to be mere coincidences", however, "even if Plaintiff wanted to, he couldn't name dates, places, or times they met because they never abided by policy, nor did they/would they expose their

'investigative steps/measures." (Doc. 1 at 16). Such conclusory allegations do not form the basis for a claim based on a violation of §1985.

First, Simms has failed to satisfy the identifiable class requirement of §1985. Second, "[a] conspiracy claim based upon Section 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals." Robinson v. McCorkle, 462 F.2d 111, 113 (3d Cir. 1972). Plaintiff's complaint is completely devoid of any allegation of purposeful and intentional discrimination between classes. Further, regardless of the fact that Simms has alleged a violation of a right recognized under §1985—his right to equal protection of the laws, he fails to allege sufficient specific facts to support any conspiratorial agreement actionable under §1985(3). Mere conclusory allegations of deprivations of constitutional rights under §1985(3) are insufficient to state a claim under §1985(3). See Robinson, 462 F.2d at 113; Kokinda v. Pennsylvania Dep't of Corr., 779 F. App'x 944, 948-49 (3d Cir. 2019) (nonprecedential). Plaintiff has failed to allege any specific facts showing that a conspiracy existed. Thus, his claim under §1985(3) must fail.

Next, Simms brings a claim under 42 U.S.C. §1986. (Doc. 1 at 17). Section 1986 is a companion to §1985(3).

In order to state a claim under §1986, a plaintiff must allege that: "(1) the defendant had actual knowledge of a §1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a §1985 violation, (3) the defendant neglected or refused to prevent a §1985 conspiracy, and (4) a wrongful act was committed." Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994). Therefore, if a plaintiff does not set forth a cause of action under §1985, his claim under §1986 necessarily fails as well, because "transgressions of §1986 by definition depend on a preexisting violation of §1985." Rogin v. Bensalem Tp., 616 F.2d 680, 696 (3d Cir. 1980). Because Simms cannot proceed with a claim under §1985(3), his claim under §1986 necessarily fails. See id.

### E. INTENTIONAL INFLICTION OF EMOTION DISTRESS

Plaintiff claims that "all defendant acted with malicious intent with the intended purpose of intentional infliction of emotional/psychological distress for/through the above listed scenarios and reasons." (Doc. 1 at 17).

To state a claim for the state tort of intentional infliction of emotional distress ("IIED"), a plaintiff must allege: (1) extreme and outrageous conduct; (2) intentional or reckless conduct; (3) conduct caused the emotional distress; and (4) severe emotional distress. See, e.g., Smith v. Washington Area Humane Soc'y, No. 2:19-cv-1672, 2020 WL 6364762, *8 (W.D. Pa. Oct.

29, 2020) (citation omitted). Importantly, the "[p]laintiff must allege *physical manifestations of the emotional distress.*" Id. (emphasis added) (citing Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004)).

Thus, "a plaintiff 'must suffer some type of resulting physical harm due to the defendant's outrageous conduct.'" Richardson v. Barbour, No. 2:18-cv-1758, 2020 WL 4815829, *14 (E.D. Pa. Aug. 19, 2020) (quoting Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010)). "It is not enough for a plaintiff to generically plead the elements of a claim for IIED, but rather, sufficient detail must be asserted to make out a plausible claim." Id. (quoting M.S. ex rel. Hall v. Susquehanna Twp. School Dist., 43 F. Supp.3d 412, 430-31 (M.D. Pa. 2014) ("Although Plaintiffs allege M.S. suffered 'physical harm' as a result of the emotional distress, such a general, non-specific averment has been found insufficient to survive motions to dismiss.") and citing Dobson v. Milton Hershey School, 356 F. Supp.3d 428, 439-40 (M.D. Pa. 2018) (holding plaintiff's bald allegations of "physical harm" and "physical manifestations of emotional distress" were not enough, without more, to set forth a plausible IIED claim)); see also Hoy v. Angelone, 720 A.2d 745, 755 (Pa. 1998) (identify IIED as a "most limited" tort); Gomez v. Markley, No. 2:07-cv-868, 2011 WL 112886, *1 (W.D. Pa. Jan. 13, 2011) ("in order to state a claim for

[IIED] under Pennsylvania Law, a plaintiff must establish physical injury or harm ... at the very least, existence of the alleged emotional distress must be supported by competent medical evidence.") (internal citations and quotation omitted).

Defendants are correct that Plaintiff did not make sufficient allegations in his complaint with respect to the nature and type of injury or injuries he suffered as a result of the conduct alleged on the part of Defendants to support his IIED claim. Therefore, as currently pled, Plaintiff's complaint fails to state a claim for IIED against any Defendant.

### F. Motion for Preliminary Injunction

Plaintiff requests that "the Court grant him a preliminary injunction/TRO placing/keeping him in P/C, giving him a semblance of human contact via electronics he has already paid for, preventing him from being transferred into a prison that exacerbates his situation instead of protecting him from danger, and holding this injunction until the final outcome of the case." (Doc. 5 at 12). It is Defendants' position that Plaintiff has failed to satisfy the standard necessary to obtain a TRO, and therefore Plaintiff's motion should be denied. (Doc. 31).

"Like a preliminary injunction, a temporary restraining order is an extraordinary and drastic remedy ... that should not be granted unless the

movant, by a clear showing, carries the burden of persuasion." <u>Bullock v.</u>
<u>Carney</u>, 463 F. Supp. 3d 519, 523 (D. Del. 2020) (internal quotation marks
omitted). "The purpose of a temporary restraining order is to preserve the
*status quo* so that a reasoned resolution of a dispute may be had." <u>Id</u>. "The
Third Circuit has defined the *status quo* as the last, peaceable, noncontested
status of the parties." <u>Id</u>. "To obtain a temporary restraining order, a movant
must establish that he is likely to succeed on the merits and will suffer
irreparable harm in the absence of preliminary relief." <u>Id</u>.

As discussed <u>supra</u>, this Court has concluded that Plaintiff has failed
to state a claim against Defendants. Accordingly, Plaintiff has not
established that he is likely to succeed on the merits of his claims, and
therefore Plaintiff's motion for TRO is denied. <u>See e.g.</u>, <u>Wilson v. Murphy</u>,
2020 WL 7022629, at *8 (D.N.J. 2020) ("[G]iven the complaint is being
dismissed in its entirety, any request for preliminary injunctive relief is also
not warranted at this time.").

### G. MOTION TO FILE A SUPPLEMENTAL COMPLAINT

On August 13, 2021, Plaintiff filed a motion for leave to file a
supplemental complaint in which he alleges "claims arising in both old and
new (supplemental) complaint involve already named defendants and some
new ones." (Doc. 42).

> An application for leave to file a supplemental pleading, like an application for leave to amend a complaint, is addressed to the sound discretion of the trial court. Factors to be considered by the court include the promotion of a justiciable disposition of the case, the delay or inconvenience the allowance of such a pleading will cause, and the prejudice to the rights of the parties to the action. Additionally, a court may deny leave to file a supplemental pleading where that pleading relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out of an entirely unrelated set of facts and related to a defendant not implicated in the original complaint.

Nottingham v. Peoria, 709 F. Supp. 542, 544 (M.D. Pa. 1988).

The Plaintiff's original complaint asserted §1983 claims for damages against seven individual Defendants arising out of a PREA complaint filed on April 6, 2020 and four misconducts issued on October 7, November 5, December 3 and 30, 2020. (Doc. 1).

The proposed supplemental pleading, as described in the Plaintiff's motions, would join SCI-Rockview employees Deputy Warden Houser, Deputy Warden Rivello, LPM Miller, Security Lt. Sherman, Security Captain VanGorder, PREA Lt. Rutherford and Dr. Byerlee, and Nurse Trimpey, Counselor Hoover and Nurse Greggory as newly added Defendants. As set forth in the Plaintiff's proposed supplemental complaint, the proposed newly added claims appear to be a First Amendment freedom of speech/expression claim, and Eighth Amendment excessive use of force claim and a sexual harassment claim. They claims arise out of alleged

- 32 -

actions occurring between June 2 and June 21, 2021. Plaintiff's supplemental claims occurred more than a year after the first event alleged in his complaint and involve a host of new Defendants.

Based on Plaintiff's motion, the proposed newly added claims do not relate *indirectly* to the complaint. They evolved out of an entirely distinct cause of action based on an entirely unrelated set of facts, occurring well over six months after the latest of the events alleged in the complaint. As such, Plaintiff's motion to file a supplemental complaint will be denied.

## V. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp, 293 F.3d 103, 108 (3d Cir. 2002). The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000); see also Ruffin v. Mooney, No. 3:16-1987, 2017 WL 3390361, at *2 (M.D. Pa. Jan. 31, 2017) (dismissing prisoner-plaintiff's case without prejudice where it was unclear whether he was seeking relief under §1983 or a habeas statute). As Plaintiff's complaint in its current form does

- 33 -

not set forth the proper factual allegations connected to any Eighth or Fourteenth Amendment legal claim or any Intentional Infliction of Emotion Distress claim against the named Defendants, dismissal is warranted. However, out of an abundance of caution, and to preserve Plaintiff's right as a *pro se* litigant, the Court will allow him to file an amended complaint regarding his Eighth Amendment failure to protect, Equal Protection claim and Intentional Infliction of Emotional Distress claim against the named Defendants, specifically alleging their personal involvement in the violation of his Constitutional rights. The amended complaint must fully allege every claim Simms wishes to pursue and be a pleading that stands by itself without reference to the original complaint or Proposed Complaint. See Young v. Keohane, 809 F. Supp. 1185, 1198 (M.D. Pa. Nov. 13, 1992). Failure to file an amended complaint in accordance with the aforementioned requirements will result in the dismissal of this action in its entirety. Simms need not file a motion to amend his complaint but may simply file an amended complaint with this Court.

## VI. CONCLUSION

For the above stated reasons, the Court will grant Defendants' motion (Doc. 25) to dismiss. However, Simms will be granted leave to file an

- 34 -

amended complaint as it pertains to his Eighth Amendment failure to protect claim, his Equal Protection claim and his Intentional Infliction of Emotion Distress. Plaintiff's motion for preliminary injunction (Doc. 4) and Motion to file a supplemental complaint (Doc. 42) are denied.

An appropriate Order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: November 24, 2021**
21-0321-01

- 35 -