IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Simms | |
| Plaintiff | Civil Action No: 3:21-cv-321 |
| V. | |
| Hauser | Brief in opposition to 12(b)(6) |
| Defendants et.al | Motion to Dismiss |

FILED SCRANTON
FEB 22 2022
PER ___ DEPUTY CLERK

## I. Introduction

Plaintiff re-filed this complaint pursuant to this court's Order in December, 2021. She followed every direction this court gave her and used the case law governing various claims that this court has supplied. The amended complaint makes no reffrence to the proposed complaint, PREA reports, or any other claim this court had directed her not to pursue or state in her complaint.

Each prong set forth in the supplied case law was thoroughly addressed to the best of plaintiff's ability and in the event the court still decides that plaintiff hasn't properly stated a claim, she asks that counsel be appointed to show her what she is doing wrong. It is apparent that her case has the structural "bones"

## II. Statement of Facts

1. Plaintiff filed this complaint in February, 2021.
2. Defendants filed a "Motion to dismiss" under Rule 12(b)(6).
3. The court granted this motion in November, 2021, with leave to amend.
4. Plaintiff amended her complaint and filed it in December, 2021.
5. Defendants again filed a "Motion to dismiss" under Rule 12(b)(6) in January.

Pg1

B.

6. Defendants filed for a time extension, which was granted, that caused plaintiff to recieve the supporting brief on February, 11th, 2022.

7. This is her brief in opposition to the 12 (b)(6) motion to dismiss.

### III. Issues Raised

A. Did the complaint follow the courts order to not pursue PREA claims and claims it dismissed without leave to amend?
   Suggested Answer: Yes

B. Did Plaintiff properly allege prior knowledge and personal involvement of each defendant?
   Suggested Answer: Yes

C. Did Plaintiff use supplied case law and subsequent prongs to effectively state a claim under the 8th, 14th amendments and IIED?
   Suggested Answer: Yes.

### IV. ARGUMENT

A. Following the courts order
   1. Persuant to this courts November 2021 order, Plaintiff has only listed an 8th Amendment claim for failure to protect, a 14th Amendment claim for equal protection, and Intentional Infliction of Emotional Distress. (See DOC 56 Legal Claims

Pg2

B

"page 5 of 6", "pg 1", "pg 2", and "pg 3.") Nowhere in plaintiff's complaint does the word "conspiracy" even appear (See DOC 56 generally) let alone actually claiming a conspiracy claim. Plaintiff is unsure what the defense is reading or what they mean by this and asks for some clarification on the matter. As for any other claim on this 12(b)(6) motion which is not being pursued on plaintiff's §1983 lawsuit, again Plaintiff is completely confused as to why the Defense is fighting non-existent claims. Plaintiff asks for clarification.

2. The word "PREA" is nowhere on the complaint or anywhere else for that matter. Sure, the word "rape" is used and it is a PREA type issue, but plaintiff is not using PREA in her complaint or as an avenue for stating a claim. Rape, the same as assault, stabbing, or having excessive force inflicted upon me, are all types of conduct of which Plaintiff is constitutionally protected from, hence the "Failure to protect" claim and the unconstitutional action of assault/rape being used.

3. I use the word "report" in my complaint in the context of informing each of the defendants of the danger posed to my life and the abuse I have already suffered. The definition of the word "report" in the Merriam-Webster Dictionary 2016 13th printing is:

Report - 1. To give an account of. 2. To serve as a carrier of. 3. To prepare or present. 4. To make a charge of misconduct against. 5. To present one's self. 6. To make known to the authorities.

None of these definitions define "report" as any

pg 5

B

specific form of communication, paper, or genre of filing. The complaint (Doc 56) uses various types of reports to make known the dangers posed to my life to authorities (PRC and Security) directly, whether it be verbally or written. I have used, and supplied as exhibits, almost every type of report available to me to advise and inform all defendants of the serious risk posed to me in general population.

4. The reports I used were letters, request slips, affadavits, grievances, grievance appeal to the facility manager, grievance appeal to final review, inmate's version of misconduct, verbal report in misconduct hearing, misconduct appeal to PRC, misconduct appeal to the facility manager, misconduct appeal to final review, verbal reports at administrative PRC hearings, and verbal reports to security staff — to name a few. At least one example of each was supplied with the complaint. The only things not filed were witness statements because they were already filed before (see Docs 34-36), however if it pleases the court, I'll re-file them. The ONLY report NOT used in this complaint, or even reffrenced, are PREA reports — per this court's order.

5. The claims set forth in the complaint are "Failure To Protect," "Equal Protection," and "IIED." No other claims are stated or pursued. The claims that ARE stated and those no longer being pursued are done so solely at the direction of this court's order. (Doc 49)

B. Actual Knowledge and Personal Involvement

1. The "actual knowledge" requirement is adequately stated in the complaint, supplied exhibits, and already spoken on in paragraphs 1-5 above. This satisfies Rizzo v. Goode, 423 U.S. 362 (1976). The "personal involvement" standard needed to be met to hold supervisors liable (even though PRC and security are not supervisors in this scope),

pg 4

B

in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d cir 1988). PRC works with security and various other fields of profession to determine and dictate where an inmate is housed, how, when, or to transfer the inmate. This is solely PRC's responsibility to tell subordinates to carry out their orders. PRC members are not supervisors while acting as members of PRC. They have a Dual function. The "supervisor" to PRC is the facility manager and proof of this is in DC-ADM 802 policy. For these reasons, the dictates of sending me to general population is the sole "personal involvement" of PRC since no one else -per policy- can make these decisions. When making these decisions, they must also give a rationale -which IS a part of DUE Process law for administrative hearings. (see Hewitt v. Helms, 459 U.S. 460, 477, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 892, 47 L.Ed.2d 18 (1976)

2. For the purposes of failing to protect, in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) The court found that an official cannot escape Eighth Amendment liability by showing he did not know the inmate "was especially likely to be assaulted by a specific prisoner who eventually committed the assault." This is so because "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." In present case, defendants knew of, were informed of, and ignored the risk posed to plaintiff and repeatedly ordered her to go to general population where she will be attacked.

3. More on the failing/refusing to protect plaintiff, the plaintiff even requested Protective Custody under DC-ADM 802 Section 1 B | G

Pg 5

B

"self confinement" but defendants refused this protection to her without explaining why or informing her of the requirements needed to obtain P/C. This makes the policy arbitrary, capricious, and meaningless. (See Johnson v. Ashcroft, 286 F.3d 696 (3d cir 2002); FDIC v. Meyer, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed 322 (1926); Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); Matthews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976))

4. In seeking damages in a constitutional claim against a prison official, the plaintiff is only burdened with the "preponderance of the evidence" standard and not "clear and convincing evidence." (see Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)) Although plaintiff averes she meets BOTH standards in her opinion. The evidence is to be viewed in light of the non-moving party (in this case, the plaintiff). (See Copper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986))

5. Plaintiff does not need to await an attack to be successful in a §1983 suit (Helling v. McKinney, 509 U.S. 25, 34-35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). Defendants were made aware, repeatedly, that plaintiff was viewed as a snitch, gay, and ~~[redacted]~~ sex offender (polite wording used here) but still failed to take necessary steps to protect plaintiff which makes an Eighth Amendment claim viable. (See Hamilton v. Leavy, 117 F.3d 742 (3rd cir 1997))

6. If the sworn complaint, submitted exhibits, and evidence readily available isn't enough, then plaintiff will submit (upon request) additional evidence that can prove defendants knew about the danger

pg 6

B

posed to my life for the entire two years I have spent, erroneously, in solitary confinement. Nothing in plaintiff's situation (solitary confinement) has changed to warrant any change on the social level. Plaintiff has been continually confined in solitary confinement since February 28th, 2020 with no changes. Nothing has happend to change any facts from February 28th, 2020 to present. Yet, somehow, the Defendants admit, on paper, that they have "verified threats" to my life in general population and I need to be transfered out of Rockview for my safety. This proving me right THE WHOLE TIME. Since nothing has changed, the Defendants MUST have known the whole time, especically when I've LITERALLY sent them affidavits and a plethera of other evidence to support my claims. ~~[scribbled out]~~ Defendants cruelly continued to order me to go to general population, knowing that there are indeed threats to my life, just to watch me refuse and continue to suffer the torturous effects of solitary confinement play on my mental/physical wellbeing.

7. As for the 14th Amendment claim of Equal Protection, I could supply more evidence in general and especially on the comparator James Brown if allowed to engage in discovery. Defendants would also have to be coopertive in this matter, and, to date, they have been less than forth coming. Plaintiff has pleaded the facts to death, and even if it is merely "my word," yes you should take it. (See Copper v. Pate, supra.) Further, Mr. Brown isn't avalible for me to collect a statement from, so I will need to depose him through discovery. It makes no penological sense to protect an elderly black man and not a white woman whose already suffered physical abuse when the duty of the D.O.C. IS to protect those PERSONS in it's custody. Especially

PG 2

B

When the Defendants were aware of a serious risk to both PERSONS, but only chose to protect one of them thus rendering Plaintiff a "class of one." (See Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073 (2000))

C. Court Supplied case law/Requirements

1. Prisoners are not stripped of their constitutional rights due to their incarceration and these rights include equal protection. (See: Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); Lee v. Washington, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968)). The rights that are claimed to be violated have been and are clearly established. The fact that James Brown (a fellow inmate) was granted protective measures is manifest proof that PRC/security is aware of their duties to protect vulnerable people in their custody "beyond debate." (See: District of Columbia v. Wesby, 583 U.S. ___, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018)).

2. Pro-se litigants' pleadings are to be construed liberally and held to a less stringent standard than pleadings drafted by lawyers; if a court can reasonably interpret pro-se pleadings to state a cognizable claim on which litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence structure, or litigant's unfamiliarity with pleading requirements. (Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)) Plaintiff's complaint was dismissed with leave to amend and the court gave Plaintiff the desired case law she needed to follow to best state the claims allowed to proceed. Plaintiff structured her whole complaint off of this courts order (DOC 49) and cited it in her complaint (DOC 56), subject by subject and prong by

P 8

B

prong. (Ie. 8th Amendment "Failure to protect" claims: Hamilton v. Leonx, 117 F.3d 742, 746 (3d Cir. 1997) [Doc 56 "legal claims" page 5 of 6"]; 14th Amendment Equal Protection claims: Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d cir. 2008) [Doc 56 "legal claims", "pg1"]; IIED: Smith v. Washington Area Humane Society, No. 2:19-CV-1672, 2020 WL 6364762, *8 (W.D. Pa. Oct. 29, 2020) [Doc 56 "legal claims", "pg 2"]) Due to the fact that the court deemed these claims could proceed and also provided plaintiff with the requirements thereof, which she strictly adhered to in her pleading per the court's order, these claims should proceed and survive a motion to dismiss because the complaint passed initial screening, used (and meets) court supplied case law thresholds, and the pro-se litigants should be construed liberally in light favorable to the plaintiff.

3. If, after pleading in this court's preferred way, with all of the necessary and recommended legal cites/requirements, and sincere attempts to correct the complaint, the court still finds that it isn't meeting pleading requirements, Plaintiff asks that counsel be appointed because it is clear that she isn't able to present her own pleadings correctly, and is too complex for her. (See: Montgomery v. Pinchak, 294 F.3d 492, 499, 501-05 (3rd cir. 2002); Alston v. Parker, 363 F.3d 229 (3rd cir. 2004))

B (Recap) IIED

1. Plaintiff used the requirements provided by this court for her pleadings. Intentionally sending a vulnerable inmate into a population of inmates with "verified threats" from those inmates to plaintiff is "utterly intolerable." The only way for plaintiff to avoid being attacked was to refuse to go to population and

pg 9

B

continue to endure solitary confinement which lead to multiple disorders being exacerbated, medication being administered then doubled, and physical involuntary bodily responses (shaking, digestive issues, sleeping issues, etc) which are the direct results of prolonged isolation in solitary confinement. These are only the new issues. The lack of mobility or being able to move freely (more than 6 steps) has caused degradation of plaintiff's physical wellbeing, particularly with her pre-existing medical conditions from having surgery on her foot (hardware etc). All of which could've been stopped at any time during Plaintiff's erroneous TWO YEARS of legal torture AKA Solitary confinement or completely prevented altogether had Defendants taken required steps to protect the plaintiff as they did/do to other inmates similarly situated.

2. Defendants knew that solitary confinement causes severe mental degradation and evidence of this can be found in law and D.O.C. policy concerning prolonged exposure to inmates with serious mental illness and multiple books written by experts on the subject. With everything stated in paragraph 1 supra, and the Defendant's knowledge of the ill effects of solitary confinement, this makes their intent clear: They Intentionally inflicted emotional distress on the plaintiff by manipulating her circumstances to keep her confined in extreme isolation for YEARS. All while telling her its HER Fault. "Verified threats" completely undermine their defense and plea of ignorance/innocence All of this meets the criteria in Kornegey v. City of Philidelphia, 299 F.Supp.3d 675, 683 (E.D. Pa. 2018) And Smith V. Washington Area Humane Society, No: 2:19-cv-1627, 2020 WL 6364762, *8 (W.D. Pa. Oct. 29, 2020).

B

## V. Conclusion

1. Wherefor plaintiff prays that her claims proceed in toto and the Defendants 12(b)(6) motion to dismiss be denied. If the court deems it necessary, plaintiff seeks mercy from the court by appointing cansel to help her construct a complaint if her amended complaint isn't good enough.

Date: 2-16-22      Signed: _____
                    Shaun Simms JP4037
                    Pro-se Litigant
                    Box A
                    Bellefonte, Pa. 16823

Pg 11

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Simms | |
|   Plaintiff | Civil Action No. 3:21-cv-321 |
| v. | |
| Houser | ORDER |
|   Defendants et al. | |

AND NOW, this ___ day of ___, 2022, it is hereby ORDERED that the Defendants' motion to dismiss is DENIED.

_____     _____
DATE                                              UNITED STATES DISTRICT JUDGE

# Certificate of Service

I certify that the listed documents were sent to the below listed parties via First class mail.

- Brief in opposition    11 pgs
- ORDER     1pg

| | |
|---|---|
| Daniel Gallagher | U.S. District court |
| Attorney General's office | Middle District of Pa. |
| Strawberry Square | 235 N. Washington Ave. |
| 15th floor | PO Box 1148 |
| Harrisburg, Pa. 17120 | Scranton, Pa. 18501 |

Signed: _____

Date: 2-16-22

Shawn Simms JP4037
Pro-Se Litigant
Box A
Bellefonte, Pa. 16823

Legal

Smart Communications
PA SCI Rockview
Shawn Simms JP4037
PO Box 33028
St. Petersburg, FL 33733

RECEIVED
SCRANTON
FEB 22 2022
PER _____
DEPUTY CLERK

U.S. District Court
Middle District of PA.
235 N. Washington Ave.
PO Box 1148
Scranton, Pa. 18501

Control # 141

INMATE MAIL
PA DEPT OF
CORRECTIONS



US POSTAGE $001.56
ZIP 16823
02 4W
0000376203 FEB 16 2022