**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHAWN M. SIMMS,** | : | **CIVIL ACTION NO. 3:21-0321** |
| **Plaintiff** | : | |
| | | **(JUDGE MANNION)** |
| **v.** | : | |
| **MORRIS L. HOUSER, _et al.,_** | : | |
| **Defendants** | : | |

**MEMORANDUM**

**I. B**ACKGROUND

Plaintiff, an inmate formerly confined in the Rockview State Correctional Institution (SCI-Rockview)[1], Bellefonte, Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The named Defendants are the following SCI-Rockview employees: Deputy Warden Houser, Deputy Warden Rivello, LPM Miller, Security Lt. Sherman, Security Captain VanGorder, PREA Lt. Rutherford and Dr. Byerlee. Id. (Doc.15).

Plaintiff's complaint states:

On 4-6-20, I wrote a letter to an outside DOC official about my problems here in Rockview that entailed PREA related issues. The matter was referred to defendant Byerlee (psych at Rockview). I then engaged in constitutionally protected conduct

---

[1] Plaintiff is currently housed at the State Correctional Institution, Coal Township, Pennsylvania. (Doc. 78).

(free speech via PREA report; 42 U.S.C. §15601) and told Byerlee that PREA violations were enacted on me by multiple people in multiple places over the course of 10 years (this is generally paraphrased). Places include Rockview, SCI-Greensburg, and my county jail. Byerlee intentionally sabotaged certain parts of my report that lead to an adverse action; a misconduct (DC-141). The misconduct exposed highly sensitive medical type information and also labeled me as an informant for making an official report to staff on a fellow inmate(s). The misconduct was then entered into the DOC computer which enabled non-essential staff to view it and show other inmates. As an additional consequence, the gang members involved in the PREA violations seen this information, resulting in a "hit" being put on me. The causal connection is that the 141 misconduct was based on the report Byerlee sabotaged. Punishing PREA victims or exposing their reports to non-essential staff serves no governmental, penological or public interest and the actions of the defendant would certainly deter victims from making a report in the future. I also aver that this information shouldn't ever be exposed in any way under the well-established rape shield laws.

Acting off of defendant Byerlee's fraudulent report, defendant Rutherford and Miller did a "PREA investigation." The constitutionally protected conduct was the PREA report. While these 2 were not involved in taking the report, it is their responsibility to do a "follow-up," monitor for retaliation, monitor victims, provide counseling, and make sure that victims can meet with staff. If they would've followed their own policy/procedures, the report could've been corrected, and a proper investigation would've been done. Instead, they violated their own policy/procedures and never once came to speak to me about the report. Since they violated policy, the adverse action was a 141 misconduct that exposed highly sensitive medical type information to non-essential personnel (via DOC computer) that also labeled plaintiff as a "snitch." Inmate also seen this 141 misconduct and as a result, the gang members who enacted the PREA violations on him put a "hit' on plaintiff, the causal connection is the sabotaged report and subsequently botched investigation coupled with blatant policy/procedure violations

- 2 -

resulted in the 141 misconduct and threats by gang members punishing PREA victims or exposing their reports serves no governmental, penological or public interest and the actions of defendants would certainly deter victims from making a report in the future. I further aver that this type of information should never be exposed for any reason (especially to non-essential personnel) under the well-established rape shield laws.

On 10-7-20, PRC (defendants Houser, Miller and Rivello) gave the orders to let me back out to population. This made me choose between being stabbed to death/catching COVID 19 or staying in the psychological torture cell (solitary confinement). I refused to go to population to preserve my life and I was given a misconduct for doing so. I submitted an "inmates version" which was read by the hearing examiner, then forwarded to security. Nothing happened to my benefit, only to my detriment (30 days punishment). I finished exhausting to final review with no change. This process was then repeated 3 more times with no results (11-5-20, 12-3-20 and 12-30-20). The only variation was on 11-5-20 when PRC intentionally ordered me to go to an "Enhanced Quarantine" Housing unit with confirmed COVID 19 cases during a mass outbreak within Rockview (including the Housing unit I was supposed to go to). I tried to grieve the PREA issue, but since a misconduct was issued, DOC policy prevents me from filing grievances on misconducts/ issues misconducts were issued over. The misconduct was later dismissed without prejudice but the damage was already done. This also prevented me from remedies associated with misconducts. There are no other remedies available to me.

On 1-14-21, I was placed on A/C pending transfer to the "PCU" in SCI-Forest where it is notorious for violence and a high concentration of the same gang members I'm seeking protection from.

(Doc. 1 at 7-11). He alleges Eighth and Fourteenth Amendment violations as

well as conspiracy claims under 42 U.S.C. §1985(3) and 42 U.S.C. §1986

and intentional infliction of emotional distress. Id. at 11-17. For relief, Plaintiff seeks nominal, compensatory, and punitive damages, as well as injunctive relief in the form of "body cameras with audio for all DOC staff", changes in policy related to "grieving incidents that misconducts were issued over", and "a change in policy preventing any PREA related information to be available to non-essential staff" and "preventing misconducts being issued to PREA victims." Id. at 19. Plaintiff also requests "an outside party (outside the DOC) to investigate staff misconduct alleged in grievances" and "a change in policy that enables the hearing examiner to put an inmate on P/C per inmate's request." Id.

By Memorandum and Order dated November 24, 2021, Defendants' motion to dismiss Plaintiff's complaint was granted as to Plaintiff's PREA claims and Plaintiff's Fourteenth Amendment Due Process claims with respect to misconduct challenges. (Docs. 48, 49). Defendants' motion to dismiss Plaintiff's Eighth Amendment failure to protect, Fourteenth Amendment Equal Protection and Intentional Infliction of Emotions Distress claims was also granted, with leave to Plaintiff to file an amended complaint regarding these claims. Id.

On December 22, 2021, Plaintiff filed his amended complaint against all named Defendants except Lt. Rutherford and Brad Byerlee. (Doc. 56).

Defendants Rutherford and Byerlee were terminated as named Defendants on December 22, 2021.

Presently before the Court is remaining Defendants' motion to dismiss Plaintiff's amended complaint. (Doc. 59). For the reasons set forth below, the Court will grant Defendants' motion to dismiss Plaintiff's amended complaint.

## II. ALLEGATIONS IN AMENDED COMPLAINT

Plaintiff states that he has "informed all Defendants of threats made to [him] by gang members who've previously abused [him], that [he] fear[s] for [his] life and [he] wants protective custody because [he] fear[s] being abused again." (Doc. 56 at 4). Plaintiff claims that although "Defendants acknowledge they are aware of the risks to [Plaintiff's] life (made by [Plaintiff] reporting to them) and admit to active involvement in denying [Plaintiff's] requests through direct admission or indirect omission," they "make boilerplate responses saying they reviewed all evidence, appeal, hearing, without providing an iota of substantiating rationale (documents, witnesses, etc.) while at the same time blaming [Plaintiff] for not 'providing evidence'." Id. Plaintiff claims that he is "trying to satisfy PRC's demand for 'evidence' in order to be granted P/C [status]" and Defendants "evade a direct answer." Id.

- 5 -

Plaintiff claims that "as a result of Defendants' refusal to protect [him], [he] acquired 4 misconducts," and "these misconducts were the direct manifestation of Defendants' intentional furtherance of abuse by authorizing [his] release to general population amongst [his] former abusers, rapists and people who want to kill [him]." Id. He states that "at no time was [he] ever given P/C [status] and [he] was forced to stay in solitary confinement under punishment status to preserve [his] right to live free from abuse." Id. He claims that he is "still housed under punishment status because [he] fear[s] for [his] life" and "fear being attacked/raped and [he fears] that as long as [he] remain[s] in a men's facility, it'll happen again especially at Rockview where it has already happened." Id. Plaintiff concludes that "in male facilities, LGBTQ+ people are up to 9 times more likely to be assaulted and/or victimized sexually than other inmates" and "similar statistics go for 'snitches' and sex offenders," which Plaintiff claims "to carry all 3 labels; the Defendants knew of all of this from the beginning" and "denial any/all protection." Id.

Thus, Plaintiff claims violations of the Eighth Amendment, in that Defendants have been deliberately indifferent to protecting him and the Fourteenth Amendment's equal protection, claiming that he has been "singled out for disparate treatment due to the fact that other inmates with

- 6 -

'snitch, gay, child molester' labels or have serious problems (sexual abuse victims, assault victims, threats to their life) are routinely granted P/C [status] whereas [Plaintiff] is denied without any rational/justifiable reason." Id.

For relief he seeks a change in policy that "gives hearing examiners ability to grant P/C status to inmates under specified circumstances;" a change in policy that "allows grievances to be filed on issues misconducts were issued over to enable an investigation on the inmate's conduct and staff;" a change in policy that "mandates outside party (non-DOC affiliated) to conduct misconduct hearings and grievance investigations and allowing the party to have access to all evidence (including cameras); mandating body cameras with audio for all DOC staff/volunteers to wear while on DOC property or conducting DOC business/assignments/duties; to be removed from D/C status and put into a facility consistent with [Plaintiff's] gender identity (female) in general population; and to have all misconducts resulting from Defendants' abuse esponged (sic)." Id.

## III. LEGAL STANDARDS

### A. MOTION TO DISMISS

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6)

of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010).

In reviewing a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." Id. at 230.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. Id. However, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to "assume that [the plaintiff]

can prove facts that [he] has not alleged...." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

Following the rule announced in Ashcroft v. Iqbal, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint must recite enough factual allegations to raise the plaintiff's claimed right to relief beyond the level of mere speculation. Id. To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three-step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

As the court of appeals has observed:

The Supreme Court in <u>Twombly</u> set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly, 550 U.S. at 570, 127 S.Ct. 1955</u>. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal, 129 S.Ct. at 1949</u> (citing <u>Twombly, 550 U.S. at 556, 127 S.Ct. 1955</u>). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' " <u>Id</u>. (citing <u>Twombly, 550 U.S. at 557, 127 S.Ct. 1955</u>).

<u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007).

The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see</u> <u>also</u>, <u>U.S. Express Lines, Ltd. v. Higgins</u>,

281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## B. SECTION 1983 STANDARD

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. §1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state

- 11 -

a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

Moreover, a defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. Id.

## IV. DISCUSSION

### A. EIGHTH AMENDMENT FAILURE TO PROTECT CLAIM

The Eighth Amendment of the United States Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). This includes

the general duty to "protect prisoners from violence at the hands of other prisoners." Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). To state a viable failure-to-protect claim, the plaintiff must establish that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused the plaintiff to suffer harm. Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012), abrogated on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir. 2020). The standard for deliberate indifference is subjective; thus, the prison official "must actually have known or been aware of the excessive risk to inmate safety." Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

To the extent that Plaintiff is alleging an Eighth Amendment, failure to protect claim, being labeled a "snitch" or a "rat" can be a dangerous designation in prison. See, e.g., Easley v. Tritt, 2021 WL 978815, at *13 (M.D. Pa. Mar. 16, 2021) (citing Moore v. Mann, 823 Fed. Appx. 92, 96 (3d Cir. 2020)) (per curiam) (recognizing that "other circuits have held that prison officials' failure to protect an inmate labeled a 'snitch' constitutes deliberate indifference").

- 13 -

In its November 24, 2021 Memorandum, this Court, finding that Plaintiff's original complaint, in its current form, did not set forth proper factual allegations to support an Eighth Amendment failure to protect claim, afforded Plaintiff an opportunity to file an amended complaint specifically alleging the personal involvement of the named Defendants regarding his Eighth Amendment violations. (Doc. 48). Plaintiff's amended complaint, however, fairs no better.

Again, while Plaintiff's amended complaint raises general allegations of threats made to him by gang members, and that Defendants are aware of these threats, Plaintiff sets forth no overt intentional act alleged on the part of the named Defendants in his amended complaint. In fact, in support of his amended complaint, Plaintiff submits a copy of the Facility Manager's Appeal Response to Plaintiff's grievance, notifying Plaintiff of his deficiencies in his failure to protect claim as follows:

> I have reviewed the initial grievance, the rejection of this grievance, and the subsequent appeal of your issues relating to a misconduct received and security "failing to protect you."
>
> Your grievance was appropriately rejected. You did not indicate in your initial grievance how Security failed to protect you. You stated you were forced to "risk your life or stay on DC status." You did not state how you were risking your life. You indicate in your appeal that you were being forced to go to population where there is a hit out on you but provide no evidence of such.

- 14 -

> In your initial grievance you ask that the DC time be removed and replaced with AC status because this situation is not of your doing. This statement is inaccurate, you refused an order and you were issued a misconduct per policy. It is apparent that you are in fact grieving the misconduct issued to you. There is no deliberate indifference to your "safe and sanitary rights" as you claim.

(Doc. 56-1 at 16). The Program Review Committee's review of Plaintiff's misconduct appeal confirms Plaintiff's unsubstantiated allegations, finding the following:

> Inmate Simms is appealing the Hearing Examiner's decision based on selections "a" and "b" above. He states that he disobeyed orders to move because of threats made to his life by gang members and he feels unsafe in General Population. He further states that he refused to move due to the COVID outbreak. He believes that PRC's decision to release him was retaliation for a lawsuit filed against PRC. He is asking PRC to remove him from DC status to AC status as he fears for his life.

> Upon review of the report and misconduct, the record of the hearing, the appeal, and all relevant information, PRC finds that all procedures employed were in accordance with law, department directives and regulations and that the punishment was proportionate to the offense.

> PRC finds no error in the process or adjudication of the written report. Security has previously been notified of Mr. Simms' allegations of a "hit" against him and threats to his personal safety. There are no verified threats against Mr. Simms. There was no retaliation involved in the release of Mr. Simms to an enhanced quarantine unit. All precautions are being taken on the housing unit to ensure the highest level of protection from COVID-19 virus. The punishment is within sanctioning guidelines and not considered to be excessive. Mr. Simms is reminded that

> he can received a punishment of up to 90 days DC for each Class
> I misconduct charge.

(Doc. 56-1 at 25). The SCI-Rockview Superintendent upheld the Hearing

Examiner and PRC's determination of lack of evidence, finding

> The basis of your appeal centers around your request for
> protective custody status. This has been investigated by the
> Security Office and determined to be invalid. In fact, you fail to
> provide any name or number of any inmate from which you fear.
> In addition, you provide no information whatsoever to support
> your claims. No leniency is warranted in this instance.

(Doc. 56-1 at 44). Plaintiff's own supporting document demonstrate Plaintiff

has failed to allege a failure to protect claim.

Thus, the Court finds Defendants were not deliberately indifferent

because, even if there could be a substantial risk of harm to Simms, there

are no specific allegations of who Plaintiff feared, which specific Defendants

were put on notice and which Defendants refused protection after having

been put on notice. As such, Defendants cannot be charged with stopping

non-specific "gang members" who have been accused of non-specific

threats or prior attacks. These allegations do not provide notice. See Tabb

v. Hannah, 2012 WL 3113856, at *6 (M.D. Pa. July 30, 2012). Deliberate

indifference requires that a prison official know of and disregard an excessive

risk to inmate health or safety. See Farmer, 511 U.S. at 837, 114 S. Ct. 1970.

Moreover, a defendant must be shown by the allegations contained in the

complaint to have been personally involved or have actual knowledge of and acquiesced in the commission of the wrong. See Rizzo v. Goode, 423 U.S. 362 (1976). Liability can only be imposed if that official played an "affirmative part" in the complained of misconduct. See Chincello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Reaffirmed in Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005), this personal involvement requirement has long been established in the Third Circuit. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).Thus, Plaintiff's failure to protect claim is unsupported by the evidence and will be dismissed.

### B. FOURTEENTH AMENDMENT EQUAL PROTECTION

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Traditionally, "[i]n order to establish a prima facie case of discrimination under the Equal Protection Clause, [plaintiffs] need[ ] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." See Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2002). However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a

"class of one" equal protection claim. See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008). To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment. See id. "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008). Persons are "similarly situated" for equal protection purposes when they are alike "in all relevant aspects." Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008) (quoting Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005)).

Here, Plaintiff's original complaint failed to plead any specific factual content to show that he was treated differently from others who were "similarly situated" to him in "all relevant aspects." Thus, Plaintiff was directed to file an amended complaint to cure this deficiency. (Doc. 24).

Plaintiff claims that he has "been intentionally singled out for disparate treatment due to the fact that other inmates with 'snitch, gay, child molester' labels or have other serious problems are routinely granted P/C whereas [he] is denied without any rational/justifiable reason." (Doc. 56 at 8). Additionally, Plaintiff claims that Defendants have "treated [him] differently from other

similarly situated 'in all relevant aspects' because [he] has all 3 labels that render a significant risk to [his] life." Id.

Much like his original complaint, Plaintiff's conclusory averments of disparate treatment in his amended are insufficient to state a plausible equal protection violation.  See Joey's Auto Repair & Body Shop v. Fayette Cty., 785 F. App'x 46, 49 (3d Cir. 2019) (dismissing plaintiff's "class of one" equal protection claim where the plaintiff identified only one comparator business in its pleading and failed to allege details as to how the comparator was a "similarly situated" entity; thus, court could not conclude that comparator business was alike "in all relevant aspects"); see also Benjamin v. Clark, No. 1:20-CV-1991, 2021 WL 391987, at *7 (M.D. Pa. Feb. 4, 2021) ("When alleging the existence of similarly situated individuals, plaintiffs 'cannot use allegations...that amount to nothing more than conclusory, boilerplate language to show that he may be entitled to relief,' and 'bald assertion[s] that other[s]...were treated in a dissimilar manner' will not suffice.") (citing Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005)) (alterations and ellipses in the original).

To the extent that Plaintiff alleges facts about one "comparator," named "James Brown" who Plaintiff claims "was granted P/C and a transfer under similar situation," (Doc. 56 at 9), Plaintiff fail to describe how the comparator

was "similarly situated," further Plaintiff's assertion of inequity is belied by Plaintiff's recent notice of address change, indicating that Plaintiff, too, has been transferred from the custody of the "malicious Defendants who are holding [him] hostage," to SCI-Coal Township. (See Doc. 78). Thus, the Court will grant Defendants' motion to dismiss Plaintiff's Fourteenth Amendment equal protection claim.

### D. Intentional Infliction of Emotion Distress

Plaintiff's original complaint did not contain sufficient allegations with respect to the nature and type of injury or injuries he suffered as a result of the conduct alleged on the part of Defendants to support his IIED claim. (Doc. 48). Thus, the court dismissed Plaintiff's IIED claim, with an opportunity for Plaintiff to amend the claim with allegations directed at specific Defendants. Id.

Plaintiff's amended complaint alleges that "Defendants displayed extreme outrageous conduct by ordering a victim to 'return to population' to live amongst inmate who've already abused him and threaten to kill him, while simultaneously denying him mandatory protection/protective measures (such as P/C and/or a transfer)." (Doc. 56 at 9). Plaintiff claims that Defendants "did this intentionally and recklessly," causing "emotional distress (depression, anxiety) and severe emotional distress like paranoia

(mistrust in staff, fear of COVID germs from malicious staff causing excessive scrubbing of cell constantly), anxiety (resulting in shaking of hands/legs, digestive issues) and depression (resulting in missed meals – which resulted in additional threats from staff). Id.

To state a claim for the state tort of intentional infliction of emotional distress ("IIED"), a plaintiff must allege: (1) extreme and outrageous conduct; (2) intentional or reckless conduct; (3) conduct caused the emotional distress; and (4) severe emotional distress. See, e.g., Smith v. Washington Area Humane Soc'y, No. 2:19-cv-1672, 2020 WL 6364762, *8 (W.D. Pa. Oct. 29, 2020) (citation omitted). Importantly, the "[p]laintiff must allege *physical manifestations of the emotional distress.*" Id. (emphasis added) (citing Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004)).

Thus, "a plaintiff 'must suffer some type of resulting physical harm due to the defendant's outrageous conduct.' " Richardson v. Barbour, No. 2:18-cv-1758, 2020 WL 4815829, *14 (E.D. Pa. Aug. 19, 2020) (quoting Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010)). "It is not enough for a plaintiff to generically plead the elements of a claim for IIED, but rather, sufficient detail must be asserted to make out a plausible claim." Id. (quoting M.S. ex rel. Hall v. Susquehanna Twp. School Dist., 43 F. Supp.3d 412, 430-31 (M.D.

Pa. 2014) ("Although Plaintiffs allege M.S. suffered 'physical harm' as a result of the emotional distress, such a general, non-specific averment has been found insufficient to survive motions to dismiss.") and citing Dobson v. Milton Hershey School, 356 F. Supp.3d 428, 439-40 (M.D. Pa. 2018) (holding plaintiff's bald allegations of "physical harm" and "physical manifestations of emotional distress" were not enough, without more, to set forth a plausible IIED claim)); see also Hoy v. Angelone, 720 A.2d 745, 755 (Pa. 1998) (identify IIED as a "most limited" tort); Gomez v. Markley, No. 2:07-cv-868, 2011 WL 112886, *1 (W.D. Pa. Jan. 13, 2011) ("in order to state a claim for [IIED] under Pennsylvania Law, a plaintiff must establish physical injury or harm ... at the very least, existence of the alleged emotional distress must be supported by competent medical evidence.") (internal citations and quotation omitted).

Plaintiff's amended complaint again misses the mark. Plaintiff was permitted to file an amended complaint containing, not only the nature and type of injury or injuries he suffered as a result of the conduct alleged on the part of Defendants, but, more importantly, the personal involvement of each named Defendant in the alleged constitutional violation. As Plaintiff has failed to cure the deficiency of his original complaint, the Court will grant

Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim for IIED against any Defendant.

## V. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp, 293 F.3d 103, 108 (3d Cir. 2002). The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000); see also Ruffin v. Mooney, No. 3:16-1987, 2017 WL 3390361, at *2 (M.D. Pa. Jan. 31, 2017) (dismissing prisoner-plaintiff's case without prejudice where it was unclear whether he was seeking relief under §1983 or a habeas statute). Here, the Court has already dismissed basically identical claims and finds that any further attempts to amend would be futile. See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story ... giving him further leave to amend would be futile.").

**VI. CONCLUSION**

For the above stated reasons, the Court will grant Defendants' motion to dismiss Plaintiff's amended complaint. (Doc. 59). As the facts Simms alleges in the amended complaint do not support a plausible claim for a constitutional violation, additional attempts by Simms to amend would be futile. See Jones, 944 F.3d at 483.

An appropriate Order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: September 29, 2022**
21-0321-02

- 24 -